# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL JOSEPH NUTT § | |
| § | |
| Plaintiff, § | |
| § | JURY DEMAND |
| v. § | |
| § | Civil Action No.: |
| ALEX M. AZAR II, SECRETARY, § | |
| UNITED STATES DEPARTMENT § | |
| OF HEALTH AND HUMAN SERVICES, § | |
| IN HIS OFFICIAL CAPACITY, § | |
| § | |
| Defendant. § | |

## COMPLAINT

Plaintiff, Michael Joseph Nutt, through undersigned counsel, sues Alex M. Azar II, Secretary of the United States Department of Health and Human Services, in his official capacity, and states as follows:

### PRELIMINARY STATEMENT

1. Plaintiff has long lived a life of service to country and community. For the past thirty years, he served with the National Disaster Medical System (NDMS), first as a paramedic and then as a Physician Assistant. Plaintiff's service with NDMS involved deployment as a member of emergency response teams during disasters such as hurricanes including Katrina, National Security Special Events including the 2017 Presidential Inauguration, and training exercises.

2. In 2006, Plaintiff was diagnosed with type 2 diabetes. For the past several years, he has been self-administering insulin once a day as ordered by his physician. Plaintiff's disability does not impact his ability to be deployed and his physician has approved his

1

deployments.  Both prior to and since his diagnosis, Plaintiff has deployed multiple times without incident.  In approximately December 2016, NDMS, under the direction of a new director, sent out a health questionnaire to all employees.  In response to that questionnaire, Plaintiff noted that he has diabetes and uses insulin.  After learning that Plaintiff uses insulin, NDMS began discriminating against him solely due to his disability.  Plaintiff remains fit for duty and ready for deployment.

3. Despite Plaintiff's continued fitness to serve as a Physician Assistant with the National Disaster Medical System, Defendant took multiple discriminatory actions against him solely due to his disability.  These actions culminated in Defendant separating Plaintiff from service.

4. Prior to filing this Complaint, Plaintiff exhausted the appropriate administrative proceedings. On December 20, 2017, he timely filed an administrative complaint with HHS.  He timely amended the administrative complaint on May 11, 2018.  He received HHS's final agency decision on December 12, 2018.  Thus, this Complaint is timely filed.

5. Plaintiff seeks all relief to which he is entitled including but not limited to declaratory relief, injunctive relief, compensatory damages, back pay, front pay, and attorneys' fees, and costs.

## THE PARTIES

6. Plaintiff lives in Warren, Michigan.

7. Defendant Alex M. Azar II is the Secretary of the United States Department of Health and Human Services (HHS) which is headquartered in Washington, DC.  He is being sued in his official capacity only.  As the head of HHS, Defendant administers multiple programs and services including, *inter alia*, NDMS.

## JURISDICTION AND VENUE

8. Jurisdiction over these claims is invoked pursuant to 28 U.S.C. § 1331 and 1343.

9. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because the claim arose in the District of Columbia and Defendant conducts business in the District of Columbia.

## FACTUAL ALLEGATIONS

10. Plaintiff has type 2 diabetes.

11. Plaintiff is an individual with a disability because, *inter alia*, his diabetes substantially limits the functions of his endocrine system and his pancreas, including the regulation of his blood glucose levels.

12. Plaintiff manages his diabetes through diet, exercise, and medication. This includes injecting insulin once each day.

13. Plaintiff served as a Physician Assistant with NDMS for approximately thirty years, including for a period of approximately eleven years after his diagnosis with diabetes.

14. Plaintiff has deployed with NDMS on multiple occasions since he was diagnosed with diabetes.

15. Plaintiff has deployed with NDMS on multiple occasions since he began injecting insulin once a day.

16. Plaintiff is able to safely store insulin during deployments.

17. Plaintiff has regular access to meals and snacks, including packaged Meals Ready-to-Eat (MREs), during deployments.

18. Plaintiff has access to alcohol swabs to cleanse the injection site prior to injecting insulin during deployments.

19. Plaintiff regularly checks his blood sugar readings using a glucometer and, if necessary, can adjust his insulin dosage during deployment.

20. Plaintiff's diabetes does not prevent him from working in austere conditions.

21. Plaintiff's treating physicians have declared him fit for deployment.

22. From his initial diagnosis in 2006 until 2017, Plaintiff was deployed numerous times without any incident related to his diabetes.

23. In 2017, however, NDMS doctor David Yue declared that Plaintiff was "non-deployable."

24. In approximately August 2017, solely due to Plaintiff's diabetes, NDMS placed Plaintiff on non-deployment status, prohibited him from participating in NDMS training activities, and prevented him from accessing NDMS databases including those for internal communications and online training. At that time, NDMS also informed Plaintiff that it would be issuing a separation notice. Plaintiff remained on this nondeployable status until his ultimate separation from NDMS due to his disability in May 2018.

25. In October 2017, NDMS adopted a policy which contains a blanket prohibition on service by any individual with diabetes who uses insulin. This policy does not allow for an individual inquiry whether an employee can perform the essential functions of their position.

26. Plaintiff has missed out on deployment opportunities and wages for same, lost opportunities for NDMS training and had to incur expenses for other training to satisfy his continuing education requirements for his Physician Assistant license and his paramedic license,

lost access to online NDMS communications and training, and ultimately lost his employment with NDMS.  Plaintiff has also experienced substantial emotional distress.

27. On December 20, 2017, Plaintiff timely filed an administrative complaint with HHS alleging employment discrimination solely on the basis of disability.

28. In March 2018, NDMS issued to Plaintiff a written proposal to remove Plaintiff from federal service and stated that Plaintiff would be provided with an opportunity to respond by phone and/or in writing to that proposal.  However, NDMS ignored both Plaintiff's written response and his request to schedule a phone call with the deciding official.

29. Effective approximately May 9, 2018, HHS separated Plaintiff from his position as a Physician Assistant with NDMS, notwithstanding the undisputed medical evidence from his physicians that he is fit to serve.

30. At all times relevant to the facts of this complaint NDMS, HHS, and their agents and employees were acting as agents of Defendant.

31. Defendant at no time engaged in an individual assessment whether Plaintiff can perform the essential functions of his position.

32. Defendant at no time engaged in an interactive process to assess whether reasonable accommodations would address the purported concerns of Defendant regarding Plaintiff's service solely due to his disability.

33. On May 11, 2018, Plaintiff timely amended his administrative complaint to reflect that Defendant separated him from service solely due to his disability.

34. Plaintiff received HHS's final agency decision on December 12, 2018 regarding his claim that Defendant separated him from service solely due to his disability.

## COUNT I
## SECTION 501 OF THE REHABILITATION ACT OF 1973

35. Plaintiff repeats and re-alleges the foregoing paragraphs in support of this claim.

36. Plaintiff is a qualified individual with a disability under Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, because his diabetes substantially limits, *inter alia*, the functions of his endocrine system and his pancreas, including the regulation of his blood glucose levels. 29 C.F.R. § 1630.2(i)(2), (j)(3)(iii).

37. Plaintiff can perform the essential functions of a Physician Assistant with NDMS with or without reasonable accommodations.

38. Defendant discriminated against the Plaintiff solely on the basis of his disability by engaging in all of the following actions against Plaintiff:

    a. Placing Plaintiff on non-deployment status;

    b. Failing to engage in an individual assessment whether Plaintiff can perform the essential functions of his position;

    c. Failing to engage in an interactive process to assess whether reasonable accommodations would address the purported concerns of Defendant regarding Plaintiff's service solely due to his disability; and

    d. Separating Plaintiff from service.

39. Defendant's discrimination against Plaintiff was intentional. Defendant applied a blanket policy to Plaintiff solely on the basis of his disability. Defendant ignored Plaintiff's documentation that he is able to perform the essential functions of the job. Defendant ignored Plaintiff's suggestion of a reasonable accommodation to address Defendant's purported and unfounded concern regarding the storage of insulin.

40. Defendant treated Plaintiff differently than similarly situated individuals without disabilities.

41. Plaintiff was injured and continues to be injured as the result of Defendant's conduct. Plaintiff has missed out on deployment opportunities and wages for same, lost opportunities for NDMS training and had to incur expenses for other training to satisfy his continuing education requirements for his Physician Assistant license and his paramedic license, lost access to NDMS online communications and training, and ultimately lost his employment with NDMS. Plaintiff has also experienced substantial emotional distress.

**RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

a. Issue a declaratory judgment that Defendant's policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Section 501 of the Rehabilitation Act of 1973;

b. Enjoin Defendant from failing to provide equal employment opportunities to Plaintiff including but not limited to giving him the correct GS classification for Physician Assistant in NDMS service; failing to provide reasonable accommodations to Plaintiff, if needed; and from engaging in any other employment practices that discriminate against Plaintiff on the basis of his disability;

c. Order Defendant to restore Plaintiff to a position as a Physician Assistant with NDMS with all privileges and benefits to which he would be entitled had there been no disruption in his service including but not limited to ensuring that he is given the correct GS classification for a Physician Assistant in NDMS service;

    d. Order Defendant to institute and carry out policies, practices, and programs that ensure nondiscrimination against qualified individuals with disabilities, and eradicate the effects of its past and present unlawful employment practices;

    e. Award Plaintiff all damages to which he is entitled including, but not limited to, back pay, front pay, all special, general, compensatory, exemplary, and/or other damages pursuant to Section 501 of the Rehabilitation Act of 1973;

    f. Award reasonable costs and attorneys' fees;

    g. Award prejudgment interest; and

    h. Award any and all other relief that may be necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Date: January 3, 2019

Respectfully Submitted,

s/Mary C. Vargas
Mary C. Vargas, Bar ID MD21727
Martha M. Lafferty*
Stein & Vargas, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Mary.Vargas@SteinVargas.com
Martie.Lafferty@SteinVargas.com
Office (202) 248-5092
Direct (615) 419-3212
Facsimile (888) 778-4620

*_pro hac vice_ application to be filed

Attorneys for Plaintiff